NO. 24-1589

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

LUIS ALGARIN-TORRES,
Appellant

APPEAL FROM JUDGMENT OF CONVICTION AND SENTENCE
IN CRIMINAL NO. 18-180-02 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

JACQUELINE C. ROMERO
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

MEGHAN E. CLAIBORNE
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8452

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................................1

    I.    Subject Matter Jurisdiction .......................................................1

    II.    Appellate Jurisdiction .................................................................1

STATEMENT OF ISSUE ................................................................................ 2

STATEMENT OF THE CASE ....................................................................... 3

    I.    Procedural History ...................................................................... 3

    II.    Statement of Facts ...................................................................... 5

STATEMENT OF RELATED CASES ........................................................ 10

SUMMARY OF ARGUMENT .....................................................................11

ARGUMENT...................................................................................................12

    THE DISTRICT COURT DID NOT COMMIT
    PLAIN ERROR IN FAILING TO REQUIRE
    PROOF AT TRIAL THAT THE DEFENDANT
    WAS AWARE OF THE NATURE OF THE
    FIREARM AS A MACHINEGUN .........................................................12

    A.    There Was No Error .........................................................14

    B.    Any Error Was Not Plain.................................................. 22

    C.    There is No Reasonable Probability
        of a Different Outcome.................................................... 26

CONCLUSION................................................................................................31

# TABLE OF AUTHORITIES

## Cases

*Bates v. United States,*
    522 U.S. 23 (1997)...............................................................15

*Carter v. United States,*
    530 U.S. 255 (2000) ..................................................... 20, 22

*Dean v. United States,*
    556 U.S. 568 (2009).......................................15, 16, 19, 22

*Elonis v. United States,*
    575 U.S. 723 (2015)........................................................... 20

*Greer v. United States,*
    593 U.S. 503 (2021) .....................................................12, 26

*Johnson v. United States,*
    520 U.S. 461 (1997).....................................................12, 26

*Liparota v. United States,*
    471 U.S. 419 (1985) ...........................................................21

*Puckett v. United States,*
    556 U.S. 129 (2009) ...........................................................13

*Rehaif v. United States,*
    588 U.S. 225 (2019) ..................................................... 4, 22

*Rosemond v. United States,*
    572 U.S. 65 (2014)...............................................................21

*Ruan v. United States,*
    597 U.S. 450 (2022) .................................................... 19, 20

*Russello v. United States,*
    464 U.S. 16 (1983)...............................................................16

*Staples v. United States,*
    511 U.S. 600 (1994) .............................................................. 20, 21, 24

*United States v. Antico,*
    275 F.3d 245 (3d Cir 2001) ...............................................................12

*United States v. Atkinson,*
    297 U.S. 157 (1936) ...........................................................................12

*United States v. Burwell,*
    690 F.3d 500 (D.C. Cir. 2012) ...............................................17, 23, 24

*United States v. Dorsey,*
    105 F.4th 526 (3d Cir. 2024)...........................................................13

*United States v. Frady,*
    456 U.S. 152 (1982)...........................................................................13

*United States v. Gamboa,*
    439 F.3d 796 (8th Cir. 2006).........................................................17, 23

*United States v. Haile,*
    685 F.3d 1211 (11th Cir. 2012)................................................17, 23, 24

*United States v. Jabateh,*
    974 F.3d 281 (3d Cir. 2020)..........................................................24-26

*United States v. Nava-Sotelo,*
    354 F.3d 1202 (10th Cir. 2003)....................................................17, 23

*United States v. O'Brien,*
    560 U.S. 218 (2010) .............................................................17, 24, 26

*United States v. Olano,*
    507 U.S. 725 (1993)...................................................................12, 24

*United States v. Pérez-Greaux,*
    83 F.4th 1 (1st Cir. 2023) ...............................................18, 19, 23, 29

*United States v. Retos,*
    25 F.3d 1220 (3d Cir. 1994) ............................................... 26

*United States v. Seals,*
    813 F.3d 1038 (7th Cir. 2016) ........................................... 25

*United States v. Seighman,*
    966 F.3d 237 (3d Cir. 2020) .............................................. 22

*United States v. Stinson,*
    734 F.3d 180 (3d Cir. 2013) .............................................. 25

*United States v. Trejo Ruiz,*
    551 F. App'x 52 (4th Cir. 2014) ................................... 23, 24

*United States v. Young,*
    470 U.S. 1 (1985) ............................................................... 13

*Watson v. United States,*
    552 U.S. 74 (2007) ............................................................ 15

## Statutes and Rules

18 U.S.C. § 922(g) ................................................................. 3, 4

18 U.S.C. § 924(c) ........................................................... passim

18 U.S.C. § 1111 .................................................................... 22

18 U.S.C. § 1546(a) ......................................................... 24, 25

18 U.S.C. § 3231 ..................................................................... 1

21 U.S.C. § 841(a)(1) .............................................................. 3

21 U.S.C. § 846 ....................................................................... 3

21 U.S.C. § 856 ....................................................................... 3

21 U.S.C. § 860(a)........................................................................... 3

26 U.S.C. § 5861(d)................................................................... 20, 21

28 U.S.C. § 1291.................................................................................1

Fed. R. Crim. P. 29 ....................................................................... 29

Fed. R. Crim. P. 52(b)..................................................................13

## JURISDICTIONAL STATEMENT

### I. Subject Matter Jurisdiction

Because the defendant was charged in an indictment with violations of federal criminal law, the district court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.

### II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the order of judgment in a criminal case entered on March 20, 2024, this Court has jurisdiction over this matter under 28 U.S.C. § 1291.

**STATEMENT OF ISSUE**

Did the district court commit plain error at trial in not instructing the jury that, with respect to a charge under 18 U.S.C. § 924(c)(1)(B)(ii), the government must prove that the defendant had knowledge that the firearm he possessed had the characteristics of a machine gun?

# STATEMENT OF THE CASE

## I. Procedural History

On December 19, 2018, a grand jury in the Eastern District of Pennsylvania returned a 25-count superseding indictment charging defendant-appellant Luis Algarin-Torres with conspiracy to distribute controlled substances (heroin, fentanyl, and cocaine), in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B) (Count 1); distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts 8, 10, 12, 14, 16, and 19); distribution of a controlled substance within 1,000 feet of a protected location, in violation of 21 U.S.C. § 860(a) (Counts 9, 11, 13, 15, 17, and 20); maintaining a drug house, in violation of 21 U.S.C. § 856 (Count 22); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 23); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 24); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 25).[1]

---

[1] Luis Alberto Rosado, Janice Torres, Milton Fuentes, and Ashley Cruz were also charged in the Superseding Indictment. *See generally* DDE # 77. Torres, Fuentes, Cruz, and Rosado all pled guilty. *See* DDE # 91 (Fuentes), 121 (Torres), 137 (Cruz), and 279 (Rosado).

On March 15, 2019, the defendant entered a plea of guilty to all of the drug trafficking charges, comprising 15 of the 17 counts against him. *See* DDE # 120. The only counts to which the defendant pleaded not guilty are the two firearms counts.

On February 20, 2020, the grand jury returned a second superseding indictment, DDE # 196, in light of the United States Supreme Court decision, *Rehaif v. United States*, 588 U.S. 225 (2019), which established that in proving a violation of 18 U.S.C. § 922(g), the government must establish that the defendant knew that he belonged to the relevant category of persons barred from possessing a firearm. As a result, the two firearms counts against the defendant were renumbered as Counts 11 (possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)) and 12 (possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)) of the second superseding indictment.

The defendant proceeded to trial on both counts. On March 31, 2023, after three days of trial, a jury convicted the defendant of both counts. On December 1, 2023, the defendant filed a motion for judgment of acquittal pursuant to Rule 29 seeking a judgment of acquittal as to Count 11. DDE # 348. The court denied the motion on February 21, 2024. DDE # 355.

On March 27, 2024, the district court imposed a total term of 622 months' imprisonment followed by 6 years of supervised release. The sentence consisted of concurrent terms of 262 months' imprisonment on most counts, followed by a consecutive term of 360 months on the 924(c) charge. The defendant filed a timely appeal.[2]

## II. Statement of Facts

In November 2016, the Drug Enforcement Administration ("DEA") was approached by a confidential source who claimed to have information on a group of people who were engaging in narcotics distribution. Supp. App. 5-6. Among the targets of this investigation was the appellant, Luis Algarin-Torres. Supp. App. 7. The confidential source subsequently made several controlled narcotics purchases from the defendant. Supp. App. 9-10, 11-12, 25-26.

On May 22, 2017, the confidential source went to the defendant's residence to conduct one of the controlled buys. Supp. App. 12-17. During this visit, the confidential source observed the defendant access a secret compartment hidden behind a light in the ceiling of the laundry room. Supp. App. 12-13, 23-24, 45-46.

---

[2] The sentences on Count 1 (60 months), Counts 22 and 23 (240 months), and Count 25 (120 months) of the first superseding indictment were limited by the statutory maximum terms applicable to those counts.

On May 10, 2018, police arrested the defendant at his home, which they searched, finding cash, crack cocaine, and a Glock handgun hidden in the light fixture compartment. Supp. App. 105-06.

At trial, the defendant stipulated to the fact that he had sold drugs on the dates in question to the confidential source, including the date where she allegedly saw the defendant access the hidden compartment. Supp. App. 9-12, 25-26, 191-92. But, the defendant denied that the Glock was his. Supp. App. 191. Rather, he sought to convince the jury that the gun belonged to one of his coconspirators who also had access to the house. DDE # 346 at 33.

The defendant's former cellmate from the Federal Detention Center ("FDC"), W.C., testified that the defendant had told him about the gun charges and had said that he had a gun, which he described as "a green-black gun with a switch on it." Supp. App. 154. W.C. further testified that he and the defendant had discussed how the "switch" made the firearm fully automatic. Supp. App. 154-55. Finally, W.C. testified that the defendant told him that the person from whom the defendant purchased the gun had installed the switch on the firearm, and that the defendant had tested the firearm to ensure that it worked. Supp. App. 155.

In addition to discussing the controlled drug buys, the confidential source testified that she had previously seen the defendant carry a gun. Supp. App. 52. The confidential source also testified that she had previously heard the defendant tell people that he had a gun in case he was ever robbed, and had heard the defendant mention his concern about being robbed of both money and the drugs in his possession. Supp. App. 52-53.

DEA Special Agent George Ott, who was present for the recovery of the firearm from the defendant's residence, testified that it was fitted with an extended magazine capable of holding 33 rounds of ammunition and that it was loaded with 18 rounds. Supp. App. 116-17. Additionally, Agent Ott testified that the firearm and extended magazine were recovered in a plastic bag that contained a second extended magazine capable of holding 17 rounds and loaded with 12 rounds. Supp. App. 117. Agent Ott also testified that he was able to tell from a visual examination of the firearm that it had been modified with an extra device to make it capable of firing as a fully automatic weapon. Supp. App. 117-18.

The government also called DEA Firearms Enforcement Officer ("FEO") Nicholas Campbell, who testified as a firearms expert concerning the firearm recovered from the defendant's house. Supp. App. 125-28. FEO Campbell testified about the modifications required to fit the firearm with a

switch, including removing the original rear slide plate, removing a small piece of metal from the frame of the firearm, and fitting the switch in place of the original rear slide plate. Supp. App. 131-36. FEO Campbell explained that the installation of the switch affected the size and appearance of the firearm, and walked the jury through several side-by-side comparisons of the firearm recovered from the defendant's house with firearms of the same make and model that had not been modified. Supp. App. 137-38.

FEO Campbell confirmed that the firearm would have come standard equipped with a 10-round magazine, and that any extended magazine would have been added after-market. Supp. App. 147-48. Finally, Campbell explained how he tested the firearm in both the semi-automatic and fully automatic mode, and confirmed that the firearm operated as fully automatic when the switch was in the correct position. Supp. App. 146.

In a special interrogatory, the jury found that the Glock had been modified to make it capable of firing as a machine gun. DDE # 327, at 2. The government then asserted at sentencing that Algarin-Torres was subject to a consecutive mandatory minimum sentence of 360 months under 18 U.S.C. § 924(c)(1)(B)(ii), that applies where a firearm that the defendant possessed in connection with a drug trafficking crime is a machinegun. The defendant did not argue at trial that knowledge of the

gun's alteration was an element of Section 924(c)(1)(B)(ii) and did not request a jury instruction to that effect. App. 5. As such, the jury was not instructed – and therefore did not explicitly find – that the defendant knew that the Glock had been modified to fire automatically.

Algarin-Torres sought post-trial relief under Rule 29 based on his mens rea argument with regard to the enhancement. The district court denied the motion.

## STATEMENT OF RELATED CASES

The government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

The district court did not commit plain error at trial in not requiring proof, with respect to the charge under 18 U.S.C. § 924(c)(1)(B)(ii), that the defendant knew that the firearm was a machinegun. The plain language of the statute does not identify a knowledge requirement, and the Court should not read any such requirement into the statute because the conduct at issue is already not otherwise innocent. Moreover, given the overwhelming weight of authority against the defendant's position, any error was not plain.

Further, even if there was plain error, the appellant cannot show a reasonable probability that the sentence would have been different had the mens rea question been presented to the jury. The government elicited testimony from multiple witnesses confirming that the defendant had prior experience with firearms and claimed to own one; that the modifications to the firearm were obvious from visible inspection, including that the switch protruded from the end of the firearm and the firearm was equipped with a magazine more than three times the size of the magazine that comes standard with that model; and finally, that the defendant had actually admitted to his cellmate that the firearm was his and that he knew it was equipped with a switch that made it operate as an automatic weapon.

## ARGUMENT

## THE DISTRICT COURT DID NOT COMMIT PLAIN ERROR IN FAILING TO REQUIRE PROOF AT TRIAL THAT THE DEFENDANT WAS AWARE OF THE NATURE OF THE FIREARM AS A MACHINEGUN

## Standard of Review

Where the defendant advances a purported mens rea requirement for the first time after trial, review of that suggestion is for plain error. *Greer v. United States*, 593 U.S. 503, 507 (2021). Likewise, a post-trial assertion of error in the court's jury instructions is reviewed for plain error. *United States v. Antico*, 275 F.3d 245, 265 (3d Cir 2001).

It is the defendant's burden to establish plain error. *United States v. Olano*, 507 U.S. 725, 734-35 (1993). To do so, he must prove that (1) the court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights, that is, the error affected the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If all three elements are established, the Court may, but need not, exercise its discretion to award relief. *Id*. That discretion should be exercised only in cases where the defendant is "actually innocent" or the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736, quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936). The "plain-error exception to the

contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985), quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982). "Meeting all four prongs" of this test "is difficult, as it should be." *United States v. Dorsey*, 105 F.4th 526, 529 (3d Cir. 2024) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).[3]

## Discussion

Appellant Luis Algarin-Torres asserts that, to support imposition of the 30-year mandatory minimum term of 18 U.S.C. § 924(c)(1)(B)(ii) for possession of a machinegun in relation to a drug trafficking crime, the government must prove that the defendant knew the characteristics of the firearm that made it a machinegun. He argues, as he did for the first time in a post-trial motion for acquittal, that he should be acquitted of the firearm enhancement, or alternatively the matter should be remanded for a trial

---

[3] The district court assessed the matter in terms of "waiver," and then, consistently with the ordinary plain error standard, found the absence of error. The Supreme Court has made clear that "waiver" refers to the knowing surrender of a right, that does not appear on the trial record in this case. Rather, this matter involves forfeiture, as stated by the Supreme Court in *Greer*, that is subject to review under Fed. R. Crim. P. 52(b) for plain error. We proceed in our analysis accordingly.

before a properly instructed jury. His argument fails, as he does not meet any prong of the plain error test.

## A.    There Was No Error.

The plain language of the statute does not identify a requisite mental state with regard to the statute, and there is no basis for this Court to read such a requirement into the statute. The district court did not commit any error.

Section 924(c) provides that a person commits a crime if he "uses or carries a firearm" "during and in relation to," or "possesses a firearm" "in furtherance of," any "crime of violence" or "drug trafficking crime." 18 U.S.C. 924(c)(1)(A). The base crime is punishable by a 5-year consecutive mandatory minimum term of imprisonment. 18 U.S.C. § 924(c)(1)(A)(ii). The mandatory minimum increases to 7 years "if the firearm is brandished," § 924(c)(1)(A)(ii); 10 years "if the firearm is discharged," § 924(c)(1)(A)(iii); 10 years "[i]f the firearm possessed . . . is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon," § 924(c)(1)(B)(i); or 30 years "[i]f the firearm possessed . . . is a machinegun," § 924(c)(1)(B)(ii).

The plain language of Section 924(c)(1)(B)(ii) does not expressly impose a mental-state requirement regarding the defendant's knowledge of

the machinegun's characteristics, and courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates* v. *United States*, 522 U.S. 23, 29 (1997).

Second, moreover, the statute uses the passive voice: "if the firearm possessed . . . is a machinegun." The statute thus focuses on what happened – not on who engaged in the conduct or why he did so. Thus, in *Dean* v. *United States*, 556 U.S. 568 (2009), the Court rejected the argument that the portion of Section 924(c) increasing the mandatory minimum sentence to 10 years where the firearm "is discharged" requires proof of intent to discharge, stating: "Congress's use of the passive voice further indicates that subsection (iii) does not require proof of intent. The passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability." *Id.* at 572 (2009). *See also Watson v. United States*, 552 U.S. 74, 81 (2007) (use of passive voice in statutory phrase "to be used" in 18 U.S.C. § 924(d)(1) reflects "agnosticism . . . about who does the using").

Third, Section 924(c) elsewhere expressly refers to the defendant's mental state. *See, e.g.*, 18 U.S.C. § 924(c)(4) (defining "brandish" to mean displaying a firearm "in order to intimidate"). The inclusion of an express mental-state requirement elsewhere in Section 924(c) underscores the

absence of a comparable requirement in the provision at issue here. *Dean v. United States*, 556 U.S. 568, 573 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."), quoting *Russello v. United States*, 464 U.S. 16, 23 (1983). The increased penalty is appropriately based on the significantly increased danger posed by a machinegun. The statute simply requires the defendant to be responsible for the characteristics of the firearm he illegally possessed in furtherance of other criminal conduct.

As noted, in *Dean*, the Supreme Court held that the portion of Section 924(c) imposing a 10-year mandatory minimum "if the firearm is discharged," 18 U.S.C. § 924(c)(1)(A)(iii), does not require proof that the defendant knowingly or intentionally discharged the firearm; rather, the statute covers even accidental discharges. 556 U.S. at 572-77. In reaching this conclusion, the Court relied on the absence of an express mental-state requirement, the statute's use of the passive voice, and the contrast with other portions of Section 924(c) that do refer to the defendant's mental state. *See id.* The same textual and structural arguments also apply in this case.

In *United States v. O'Brien,* 560 U.S. 218, 235 (2010), the Supreme Court held that *possession* of a machinegun was an element to be proved to the jury beyond a reasonable doubt. However, as the defendant recognized, the Supreme Court explicitly declined to decide whether "a defendant who uses, carries, or possesses a firearm must be aware of the weapon's characteristics." *Id.* at 222.

Prior to the trial in this case, the four other court of appeals to consider the question left open by *O'Brien* – the Eighth, Tenth, Eleventh, and D.C. Circuits – uniformly held that Section 924(c)(1)(B)(ii) does not require proof that the defendant knew that the firearm was a machinegun. *See United States* v. *Gamboa*, 439 F.3d 796, 812 (8th Cir. 2006); *United States* v. *Nava-Sotelo*, 354 F.3d 1202, 1206 (10th Cir. 2003); *United States* v. *Haile*, 685 F.3d 1211, 1218 (11th Cir. 2012); *United States* v. *Burwell*, 690 F.3d 500, 514 (D.C. Cir. 2012) (en banc) (statute does not provide strict liability because "the government is required under this statute to first establish *mens rea* with respect to the predicate offense, and then to prove that the defendant intentionally used, carried, or possessed a firearm in the course of that crime").[4]

---

[4] The Eighth Circuit's and Tenth Circuit's decisions have arguably been superseded by *O'Brien*: Those courts assumed that the fact that the

*continued* . . .

In arguing that Section 924(c)(1)(B)(ii) requires proof beyond a reasonable doubt of *mens rea*, the defendant does not address any of these decisions, and instead relies exclusively on the First Circuit's decision in *United States v. Pérez-Greaux*, 83 F.4th 1 (1st Cir. 2023), that was issued after the trial in this case. In *Pérez-Greaux*, the court of appeals determined that the district court had erred by refusing to instruct the jury that Section 924(c)(1)(B)(ii) requires proof that the defendant knew that the firearm he possessed was a machinegun. *Id.* at 9. The court of acknowledged that the statute does not expressly require proof of such knowledge. *Id.* at 14. Invoking the "presumption of mens rea," however, the court found such a requirement to be implicit in the statute. *Id.* at 18. The court emphasized that a violation of Section 924(c)(1)(B)(ii) carries a 30-year mandatory minimum term of imprisonment. *Id.* at 20. The court believed that "Congress could not have intended" to "impose such a draconian sentence for a crime and not hold the government to the burden of proving knowledge of the specific characteristics of the firearm that make the defendant culpable under that particular section." *Id.* Accordingly, the court remanded the case for a new trial on the machinegun count. *Id.* at 28.

---

defendant's firearm was a machinegun was only a sentencing factor, but the Supreme Court later clarified in *O'Brien* that it is an element.

The decision is *Pérez-Greaux* is inconsistent with the language of the statute and other circuit and Supreme Court precedent. Indeed, it is the first and only case where the Supreme Court or the First Circuit has applied the presumption of scienter to a statutory provision that does not criminalize otherwise innocent conduct.[5]

The holdings of the other Courts of Appeal are consistent with other Supreme Court precedent, which has applied a *mens rea*/scienter presumption to only two types of statutes. First, the Supreme Court has read into those statutes containing "no *mens rea* provision whatsoever . . . that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct," *Ruan* v. *United States*, 597 U.S. 450, 458 (2022) (citations and internal quotation marks omitted) – at least absent express or implicit signs that Congress intended to create a strict liability crime. *Dean*, 556 U.S. at 575. Second, the Court has applied the presumption "with equal or greater force" to read "a general scienter

_____

[5] On December 10, 2023, the government filed a petition for rehearing *en banc* in *Pérez-Greaux*. This petition was denied.

Notably, the court in *Pérez-Greaux* remanded for a new trial. It declined to enter an acquittal with respect to the enhancement, given that there was sufficient evidence supporting its application. 83 F.4th at 23. The same result would apply here if the government's presentation regarding plain error is incorrect. As will be discussed later, there is ample evidence of Algarin-Torres' knowledge of the disputed fact.

provision" in a statute broadly; for example, it has "held that a word such as 'knowingly' modifies not only the words directly following it, but also those other statutory terms that separate wrongful from innocent acts." *Ruan*, 597 U.S. at 458 (citations and internal quotation marks omitted). In either case, the presumption exists to separate "wrongful" and "innocent" conduct. It therefore attaches to "each of the statutory elements that criminalizes otherwise innocent conduct." *Elonis v. United States*, 575 U.S. 723, 737 (2015). But this presumption requires courts to "read into a statute only that *mens rea* which is necessary to separate wrongful from otherwise innocent conduct." *Id.* at 736. For once any implied *mens rea* and explicit *actus reus* elements together describe conduct that "falls outside the realm of the 'otherwise innocent,'" the presumption has no further work to do. *Carter v. United States*, 530 U.S. 255, 269-70 (2000).

In *Staples v. United States*, 511 U.S. 600, 610 (1994), the defendant was charged with possessing an unregistered machinegun in violation of 26 U.S.C. § 5861(d). At trial, the defendant testified that the rifle had never fired automatically and he was unaware it had the capacity to do so. He then sought a jury instruction stating that to convict him, the government had to prove beyond a reasonable doubt that he knew the gun fired automatically. *Id.* at 604. The district court rejected this proposed

instruction, and the defendant was convicted. *Id.* The defendant appealed, and the circuit court affirmed. The defendant appealed to the Supreme Court, which agreed with the defendant that the government must prove *mens rea* to show a violation of this statute. *Id.* at 619. In doing so, the Court recognized the "long tradition of widespread lawful gun ownership by private individuals in this country" such that a citizen would not be on notice that ownership of a firearm – including a machinegun – was criminal. *Id.* at 610-11. The Court declined to construe the statute to dispense with a *mens rea* requirement "where doing so would 'criminalize a broad range of apparently innocent conduct.'" *Id.* at 610, quoting *Liparota v. United States*, 471 U.S. 419, 426 (1985).

In contrast to the statue at issue in *Staples* that, as recognized by the Supreme Court, encompassed potentially legal activity, Section 924(c)(1)(B)(ii) is a "double-barreled crime" – anyone violating that statute is already violating Section 924(c)(1)(A) by possessing a firearm in relation to a crime of violence or drug trafficking crime. *See Rosemond v. United States*, 572 U.S. 65, 71 (2014). Providing for an enhanced penalty under Section 924(c)(1)(B)(ii) when the gun "possessed" in furtherance of one's drug trafficking "is a machinegun" does not, therefore, punish conduct that would otherwise be innocent. As recognized by the district court here,

"possession of *any* firearm in furtherance of a drug trafficking crime constitutes wrongful conduct." App. 9. For these reasons, there is no need to read into Section 924(c)(1)(B)(ii) a knowledge requirement meant to "separate wrongful from innocent acts." *See Rehaif*, 588 U.S. at 232; *see also Carter*, 530 U.S. at 269.

Here, as further recognized by the district court, the jury found that the defendant intentionally possessed the firearm in furtherance of his drug trafficking offense, a clearly unlawful act. App. 9. In *Dean*, the Supreme Court noted that "it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts" and cited the felony-murder rule as a well-known example of this principle. 556 U.S. at 575, citing 18 U.S.C. § 1111 (emphasis in original). That is exactly the case here. For these reasons, the district court did not err in not requiring proof of *mens rea* with regard to the characteristics of the firearm.

## B.   Any Error Was Not Plain.

Even if there was error, it was not "plain," and the claim therefore fails on the second prong of the plain error test.

This Court has never directly addressed the issue of knowledge, thus there is no controlling law on the issue and any error could not have been "plain." *See, e.g.*, *United States v. Seighman*, 966 F.3d 237, 244 (3d Cir.

2020) ("The novelty of the question presented precludes relief under the stringent *Olano* standard because any error would not have been plain."). While the First Circuit has recently held in *Pérez-Greaux* that knowledge is a necessary element under 18 U.S.C. § 924(c)(1)(b)(ii), the First Circuit acknowledged that its conclusion was in contravention of prior decisions by at least two other Circuits. *See United States v. Haile*, 685 F.3d 1211, 1218 (11th Cir. 2012) (holding that the court was not required to instruct the jury that the defendants knew the firearm in question was machinegun); *United States v. Burwell,* 690 F.3d 500, 516 (D.C. Cir. 2012) (en banc) (holding that "a conviction under § 924(c) does not require proof the defendant knew the weapon was a machinegun") (internal quotation omitted). These Circuits have also been joined by the Eighth and Tenth Circuits in reaching this conclusion. *See United States* v. *Gamboa*, 439 F.3d 796, 812 (8th Cir. 2006); *United States* v. *Nava-Sotelo*, 354 F.3d 1202, 1206 (10th Cir. 2003).

The Fourth Circuit addressed this situation in *United States v. Trejo Ruiz*, 551 F. App'x 52, 54 (4th Cir. 2014) (not precedential). The defendant there was charged with a violation of Section 924(c)(1)(B)(ii), failed to object to the lack of a jury instruction as to knowledge, was convicted, then sought to have his conviction overturned. *Id.* at 53. The defendant did not cite to any statute or rule mandating that the government must prove that a

defendant knew the firearm could operate as an automatic weapon, but argued that under *O'Brien* and *Staples* proof of *mens rea* is implicit. *Id.* at 54. The court declined to make a determination as to whether the defendant's argument was correct because it found that any such error would not have been plain, and thus would fail. *Id.* In reaching this conclusion, the Fourth Circuit noted that this was an issue of first impression for the circuit, the Supreme Court had never spoken directly on the issue, and that at least two Circuit Courts had already rejected these same arguments in *Burwell* and *Haile*. *Id.* ("Under these circumstances, [the defendant] is not entitled to plain-error relief even if, as he contends, the district court erred.").

For the same reasons here, it is not "plain" that the district court erred. *Olano*, 507 U.S. at 734 ("At a minimum, court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law."); *Trejo Ruiz*, 551 F. App'x at 54.

The decision in *United States v. Jabateh*, 974 F.3d 281 (3d Cir. 2020), is informative. In that case, the defendant was convicted of, among other offenses, making false statements to immigration authorities, in violation of 18 U.S.C. § 1546(a); these counts added 20 years to his ultimate sentence. On appeal, the defendant argued for the first time that the statute

was wrongly applied to oral as opposed to written statements. The Court explained that this was an issue of first impression nationally, and embarked on an exhaustive assessment of the text and history of the statute, ultimately concluding that the defendant's new interpretation is in fact correct. But the Court denied relief on plain error review, as the error was not "plain," but only apparent after "a close interpretive inquiry reveal[ed] the best reading of § 1546(a)." *Jabateh*, 974 F.3d at 299. The Court stated that "'lack of precedent alone will not prevent us from finding plain error,'" but acknowledged that "'this court rarely finds plain error in [matters of first impression.]'" *Id.* (quoting *United States v. Stinson*, 734 F.3d 180, 184 (3d Cir. 2013); *United States v. Seals*, 813 F.3d 1038, 1047 (7th Cir. 2016)). This Court concluded: "Taken together, the novel question of whether § 1546(a) is best read to include oral statements is not an interpretive exercise that falls within the exacting limits of [Rule] 52(b)." *Jabateh*, 974 F.3d at 299.

This analysis plainly applies here. In contrast to the situation addressed in *Jabateh*, Algarin-Torres does not present an issue of first impression nationally; to the contrary, it is one that has repeatedly been decided adversely to him by federal appellate courts, with only one exception. His assertion that the weight of authority is wrong manifestly

fails to establish plain error, such that, as in *Jabateh*, he may not obtain relief on plain error review, even if his legal argument is in fact correct.[6]

## C. There is No Reasonable Probability of a Different Outcome.

We observe for purposes of completeness that even if there was plain error, a new trial is not warranted, as Algarin-Torres does not sustain his burden on the third prong of plain error review to establish a "reasonable probability" that the outcome of this case would have been different had the issue been presented to the jury. *See Johnson v. United States*, 520 U.S. 461 (1997) (failure to instruct a jury regarding an element of the offense is reviewed for plain error absent a timely objection); *Greer v. United States*, 593 U.S. 503, 508 (2021) ("Greer has the burden of showing that, if the District Court had correctly instructed the jury on the mens rea element of

---

[6] The defendant's reliance on *United States v. Retos*, 25 F.3d 1220, 1230 (3d Cir. 1994), is wholly misplaced. There, in the intervening period between the trial and the appeal, the Supreme Court ruled on the pertinent issue and clarified that the sought after jury instruction on knowledge was required. *Id.* at 1230. Here, the Supreme Court has not made any such ruling. At most, as discussed above, in *O'Brien,* the Supreme Court held that whether the firearm constitutes a machinegun is an element of the offense. 560 U.S. at 235. The Court made clear that its decision "expresse[d] no views on the point" of whether the defendant is required to be aware of the machinegun's characteristics. *Id.* at 222.

a felon-in-possession offense, there is a 'reasonable probability' that he would have been acquitted.").

There was ample and largely undisputed evidence of the defendant's knowledge that what he possessed was a machinegun. For his part, Algarin-Torres' defense did not address the characteristics of the weapon; his argument was that he did not possess the gun at all. And at sentencing, he did not dispute the court's conclusion that the machinegun enhancement applied. In the meantime, the government presented evidence at trial of the defendant's knowledge.

The government elicited testimony from W.C., the defendant's cellmate for a period of time at the FDC. W.C. testified that the defendant told him that he had a "greenish black gun with a switch on it" that made the firearm fully automatic. Supp. App. 154-55. W.C. also testified that the defendant told him that the person from whom the defendant purchased the gun had installed the switch on the firearm, and that the defendant had tested the firearm to ensure that it worked. Supp. App. 155. W.C.'s testimony establishes first, that the defendant had handled and fired the firearm in question, and thus was familiar with the characteristics of the firearm. Second, the defendant's statement to W.C. about who installed the switch supports the conclusion that the defendant not only knew the

firearm had been altered, but also had first-hand knowledge of who completed the installation.

Additionally, the government put forth testimony from FEO Campbell and Special Agent Ott concerning the visibility of the switch on the firearm. FEO Campbell discussed how the installation of the switch affected the size and appearance of the firearm and pointed out the modifications on both the actual firearm and in side-by-side photograph comparisons of the firearm and an unmodified version of the same make and model firearm. Supp. App. 137-38. FEO Campbell also confirmed that the firearm would have come standard with a 10-round magazine, and that any extended magazine would have been added after-market. Supp. App. 147-48. Agent Ott testified that when he recovered the firearm from the trap in the defendant's ceiling, it was fitted with a 33-round capacity magazine. Supp. App. 116-17. SA Ott also confirmed that he was able to tell from simple visual inspection of the firearm that it had been modified with a switch. Supp. App. 117-18.

Finally, the government presented testimony from a confidential source who provided further evidence of the defendant's familiarity with firearms. The confidential source testified that she had previously heard the defendant tell people that he had a gun in case he was robbed and that she

had previously seen the defendant carry a gun. Supp. App. 52-53. She also observed him access the same hidden compartment where the firearm was later found by agents. Supp. App. 12-13, 23-24, 45-46. This evidence further supports that the defendant had the opportunity to inspect and handle the firearm in question, and should have been able to recognize that the firearm had been modified with a switch just by observing it, as had Ott and Campbell.

As recognized by the district court, the First Circuit ruled in *Pérez-Greaux* that the knowledge evidence was sufficient even in the apparent absence of a related jury instruction.

> [C]rediting the government's witnesses, as we must on a Rule 29 motion, the cumulation of evidence reveals that the firearm in question was indeed a machinegun as federal law defines it and that a reasonable jury could draw the reasonable inference that Pérez-Greaux knew it was one.

*Id.* at 27.

In *Pérez-Greaux*, the government established the defendant's *mens rea* through expert testimony that the gun had been visibly altered and that it was loaded with an after-market extended magazine, as well as testimony that the defendant had knowledge of firearms and had handled the gun in question, and. *See Pérez-Greaux*, 83 F.4th at 26-28. The same evidence is present here. The record supports that the gun had been altered – the rear

plate had been removed and a switch installed, and it had been fitted with an extended magazine with a capacity three times the size of the standard magazine. There was testimony that the defendant had discussed owning a firearm and previously been seen carrying a firearm (and thus, it is reasonable to assume had some level of familiarity with firearms), and had handled and fired the gun in question. And, most importantly, there was a witness who testified that the defendant had personally admitted to him that he knew the gun was outfitted with a switch, knew who had installed it, and knew that the switch made the firearm capable of firing like an automatic.

In response to this abundant evidence, Algarin-Torres musters only the possibility that when he told W.C. that the gun had a switch, he was only relaying information he learned in discovery, not at the time he possessed the machinegun. Br. 14. But given the content of W.C.'s detailed testimony, including his report that Algarin-Torres admitted to testing the weapon, and that Algarin-Torres identified the person who installed the switch, it seems unlikely in the extreme that a jury would adopt the defendant's dubious suggestion rather than the clear inferences from the testimony. At the very least, it cannot be said that Algarin-Torres'

speculation presents a "reasonable probability" of a different verdict that would carry his burden on plain error review.

## CONCLUSION

For the reasons stated above, Algarin-Torres' post-trial challenge regarding the application of the machinegun enhancement does not satisfy any of the three principal prongs of plain error review. The judgment of the district court should be affirmed.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126


*/s Meghan E. Claiborne*
MEGHAN E. CLAIBORNE
Assistant United States Attorney
Pa. Bar No. 315918


United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8452

# CERTIFICATION

1. The undersigned certifies that this brief contains 6,189 words, exclusive of the table of contents, table of authorities, signature block, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

*/s Meghan E. Claiborne*
MEGHAN E. CLAIBORNE
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this brief has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Todd M. Mosser, Esquire
Mosser Legal, PLLC
100 South Juniper Street
Philadelphia, PA  19107


/s Meghan E. Claiborne
MEGHAN E. CLAIBORNE
Assistant United States Attorney


DATED:  November 8, 2024.